IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUISE THORNE, *et al.*,
        Plaintiffs,

v.

DISTRICT OF COLUMBIA, *et al.*,
        Defendants.

Civil Action No. 06-01204 GK

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PHOTOGRAPHS OF THE DEFENDANT OFFICERS

Plaintiffs herein seek to compel the defendants District of Columbia Metropolitan Police Officers to produce their photographs because allegedly plaintiffs can not remember who arrested them on January 15, 2006. Defendants oppose such a production because the officers in this case have already been identified, there is a serious and specific security risk to the officers in releasing their photographs, and the case cited by plaintiffs in support of their position is not applicable.

*Factual Background*

On January 15, 2006, the plaintiffs and one male passenger, who is not a party, were driving at or near Valley Avenue and Atlantic Street, S.E., Washington, D.C. Plaintiffs refused to stop for an unmarked police car, which had its emergency light flashing on its dashboard, after plaintiffs ran a stop sign. Plaintiffs continued to evade the police even after a marked car followed them with emergency lights and siren activated for several blocks. The officers have testified that the driver, Mikelle Bassett, would not stop, and that she screamed hysterically and acted irrationally once stopped. Plaintiffs came to a stop only when blocked by traffic.

Plaintiffs allege common law claims and claims under 42 U.S.C. § 1983 against the defendants. Contrary to the allegations in the Complaint and plaintiffs' Motion to Compel, no arrest occurred here; instead, the officers issued a citation to the driver. The officers called an adult to the scene and permitted plaintiffs to leave with that adult. The officers deny plaintiffs' allegations which differ vastly from the officers' account of the traffic stop.

*Argument*

I. **The Officers in This Case Have Already Been Identified.**

The defendant officers in this case have already been identified and therefore, it is unnecessary for plaintiffs to obtain their photographs. Plaintiffs already amended their complaint to name the officers. During discovery, the District of Columbia produced the identity of the officers that conducted the traffic stop and the radio run transmissions that identify the officers. These officers were then deposed by plaintiffs' counsel, but plaintiffs themselves failed to attend these depositions.

Plaintiffs do not know which officers they want to accuse; defendants should not be required to assist in this endeavor. In fact, the undersigned counsel deposed plaintiffs, who could not describe the physical appearance of any of the officers except to state that they were white males. In actuality, three of the defendant officers are white and one of the defendant officers is not. Defendants are not required to prove plaintiffs' case for them, and contend that plaintiffs should have attended the depositions while the officers were there in person, instead of demanding photographs afterwards, which, as described below, is a security risk to the officers.

III. **There Is a Security Issue in Releasing the Photographs of Defendants in this Case.**

    A. **There Has Been a Specific Threat to the Officers in this Case.**

The identity of police officers and their personal records are normally confidential because of the inherent risk to police officers. In addition to the intrinsic risk to police officers, there has been a specific threat by one of plaintiffs to the officers involved in this case. Mikelle Bassett, the driver of the vehicle, whom the officers described as acting irrational and screaming hysterically at the traffic stop, has made specific threats to the officers. Ms. Bassett treated with a psychiatrist, Dr. Corlis Randolph, after the traffic stop. Undersigned counsel just received Dr. Randolph's report last week after the undersigned served her and plaintiffs' counsel with a subpoena. Dr. Randolph's two-page report provides that Mikelle Bassett said the following to Dr. Randolph: "Mikelle's responses about the incident remained extremely angry with wishes to [sic] revenge by killing them or bombing the officer's homes." The report provided further, "… Mikelle kept her responses brief except when describing her desires to see harm come to the police officers." Yet another such passage was that "She was gradually able to reduce some of the anger as indicated by initial expressions of wanting to bomb their homes, to later expressions of simply wishing they would all die." The report also describes that Ms. Bassett was expelled from school for striking a boy in the face. The report indicates violent idealizations and violent actions by Ms. Bassett that appear to show signs of anger issues by Ms. Bassett.[1] Undersigned counsel is in the process of obtaining all of Ms. Bassett's medical/psychological records.

At deposition, Ms. Bassett would not directly answer undersigned counsel's questions about the threats made to the officers and did not deny that she made the threats. The other plaintiffs were equally unreasonable in their views of the police. The undersigned also learned that Lakesha Parker is on probation before judgment in Maryland. Plaintiff Parker claimed that a police officer in Montgomery County threw her cell phone, but would not state why she was arrested. Plaintiff

---

[1] Undersigned counsel did not attach the report to this opposition because of the privacy issues of Ms. Bassett. However, undersigned counsel would file the report under seal if the Court so wishes.

Shaneka Harrison is on parole, but Plaintiffs' counsel instructed plaintiff Harrison not to answer as to why she is on parole.

In this case, we have a set of facts in which the defendant officers and their families could be in danger from the production of their photographs. Mikelle Bassett has already threatened to "kill the officers" or "bomb the officers' homes." The danger could be from plaintiffs themselves or friends of the plaintiffs. These threats should not be taken lightly especially in the current environment.

Recognizing such danger, some states have even exempted photographs of police officers from disclosure as exempt public records. For example, in *State ex rel. Plain Dealer Publ'g Co. v. City of Cleveland*, 106 Ohio St. 3d 70 (Ohio 2005), police officer photographs were not discoverable by statute:

> The court noted that the photographs were "public records" under Ohio Rev. Code Ann. §§ 149.43(A)(1) and 149.011(G), which were subject to disclosure absent an exemption. The court found that the photographs fit within the exemption under Ohio Rev. Code Ann. § 149.43(A)(7)(b), as the requested police officer photographs identified the individual officers' occupation as peace officers. The court declined to review the claim under the constitutional right to privacy, and it further held that the cities had not waived their right to the exemptions.

These plaintiffs have expressed a dislike for the police in general, and a direct wish for harm to the officers, who were involved in this stop, in their homes. It is a risk that should not be allowed in this case. The burden is on the plaintiffs to point out whom they claim harmed them; yet, they can not even describe the officers. That was all the more reason for them to have attended the officers' depositions, but they chose not to do so. The officers should not be placed in danger now to accommodate plaintiffs.

### B. Providing Photographs of the Officers Would Jeopardize Any Undercover Work They Have Done or Might Have to Do.

There is an obvious danger presented to undercover work of police officers by producing their photographs. A decision regarding whether or not an array of police officer photographs should be discoverable must turn on the specific facts of each case. In *ACLU v. Whitman*, 2006 Colo. App. LEXIS 1652 (Colo. Ct. App. 2006), photo arrays without names or any data was allowed, but the court made it clear that under a different set of facts such an array could be denied.

> A police commander testified at the show cause hearing that police officers' photographs are not generally available to the public because of concerns about retaliation and about thwarting undercover operations. He testified that officers routinely receive threats from citizens, particularly where the officer's home address has been made available, and added: "So we do our best to protect the officers' confidentiality any way we can." The trial court ruled that the photo arrays were discoverable in this case because "no names or other data are associated with those photos, and most of the witnesses were unable to make an identification from the arrays." However, another court, confronting a different set of facts, could conclude that the officers had an objectively reasonable expectation of privacy in such arrays.

*Id.*, 12-13. In this case, we have a set of facts in which the officers have already produced themselves for hours at a time. Plaintiffs repeatedly stated in their own depositions that they can not even describe the officers. Each said only that the officer interacting with her was a white male. Production of such photographs at this point would only jeopardize past or future undercover work, as well as endanger the lives or safety of the officers who have already been specifically threatened by one of the plaintiffs.

**III. The Sole Case Cited by Plaintiffs in Support of Their Position Does Not Provide That Defendants Should Produce the Officers' Photographs.**

Plaintiffs cite one case in support of their position, *Rivers, et al. v. City of Portland*, 1989 U.S. Dist. Lexis 14657, which does not provide that defendants should automatically provide police officers' photographs. It is important to note that this is not a decision from this circuit. In any event, the *Rivers* decision does not support plaintiffs' argument that they should possess photographs of the officers. In this case, plaintiffs seek to place some legal obligation upon defendants to produce pictures of the officers involved in stopping plaintiffs, whereas in the *Rivers* case, the defendants willingly made photographs available at city hall for plaintiffs to come to view, but not to keep. Defendants are not willing to do that, and *Rivers* does not stand for the proposition that they should. Instead, the Court in *Rivers* stated that the plaintiffs should not have resisted going to city hall to view the photographs. In fact, the court stated that plaintiffs could not have copies of the photographs of the officers because it would endanger the security of the officers in undercover work. In this case, defendants do not believe that they should be required to produce photographs of the officers, who have appeared in person already, simply for the convenience of the plaintiffs, but at the grave expense of the officers' safety.

*Conclusion*

For all of the foregoing reasons, plaintiffs' motion should be denied with prejudice.

    Respectfully submitted,

    LINDA SINGER
    Attorney General for the District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General, Civil Litigation Division

    /s/ Nicole L. Lynch
    NICOLE L. LYNCH
    Chief, General Litigation, Section II

        /s/ Urenthea McQuinn
        URENTHEA McQUINN
        Assistant Attorney General
        D.C. Bar #182253
        441 4th Street, N.W.
        Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6646
        (202) 727-0431 (Fax)
        urenthea.mcquinn@dc.gov

May 11, 2007