**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LOUISE THORNE, *et al.* : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | |
| : | Civil Action No. 06-1204 |
| THE DISTRICT OF COLUMBIA : | Judge Gladys Kessler |
| : | |
| And : | |
| : | |
| UNKNOWN OFFICERS : | |
| Metropolitan Police Department : | |
| : | |
| **Defendants.** : | |

**PLAINTIFFS OPPOSITION TO**
**DISTRICT OF COLUMBIA'S MOTION IN LIMINE**

Plaintiff respectfully opposes defendants' Motion In Limine and states as follows.

**A. Background**

Defendants have moved to exclude the testimony of Robert Klotz, plaintiff's police expert, Dr. Corlis Randolph and Dr. Harris. Dr. Randolph is Licensed Clinical Social Worker who treated both Mikelle and Mikeesha Bassett following their encounter with the defendant police officers on January 15, 2006. During the course of her treatment she diagnosed post traumatic stress disorder for both patients.

**B. The testimony of Robert Klotz Is Admissible**

Defendants move to exclude the entire testimony of Robert Klotz, plaintiffs' police expert on two grounds. Firstly, they assert that his opinion that the police officers did not have articulable suspicion or probable cause to stop and arrest or detain plaintiffs is inadmissible. Secondly, they argue that his opinions are replete with other legal conclusions that are not within an expert's province but rather are the province of the judge and the jury. They rely principally, on the case of *Steele v. D.C. Tiger Mkt.*, 854 175 (D.C. 2004).

In that case, Mr. Klotz was precluded from testifying as to the responsibility of Tiger market for training a private security guard. However, in that case, Mr. Klotz did not hold himself out as an expert in private security and the plaintiff did not proffer him as an expert in that area. Moreover, the instant case, is not a private security case, but rather one involving metropolitan police officers. That part of the decision clearly, does not apply to this case.

In *Steele,* the defendants' second objection was that Mr. Klotz should not be allowed to render opinions as to whether Steele had been arrested or whether there was probable cause for his arrest. In response, Steele acknowledged that he planned to ask his expert to explain the legal meaning

of such terms as "arrest," "probable cause," and "reasonable articulable suspicion" and then to opine that Harris had arrested Steele at the D.C. Tiger Market without the requisite legal justification. As part of his planned inquiry, Steele intended to ask Klotz to explain "what actions a suspect must take to constitute the crime of shoplifting according to [D.C. Code § 22-3213 (2001)]," and to testify that Harris did not see Steele take such actions. The trial judge ruled, however, that the expert witness would not be permitted to define and "interpret the law," because that was "the function of the Court." Nor would the witness be permitted to testify whether, in his opinion, there was an arrest or probable cause to arrest in this case; such testimony, the judge reasoned, would not assist the jury in performing its role as trier of fact. The ruling of the trial court was upheld on appeal.

However, Mr. Klotz did testify as to about pertinent police training and procedures, among other matters. Mr. Klotz was allowed to testify that police regulations require an officer to have reasonable articulable suspicion to stop someone and probable cause to make an arrest. Klotz then was allowed to opine that based on his review of Timothy Harris's deposition, Harris did not "know the elements of shoplifting" or "what probable cause was to make an arrest for shoplifting." Mr. Klotz testified that Harris "had it confused with reasonable suspicion." Mr. Klotz also was allowed to state his opinion that Harris was not "acting according to police rules and regulations when he

stopped Thomas Steele," nor when he searched Steele. The appellate court impliedly approved the trial court's decision to admit such testimony.

In this case, Mr. Klotz's first opinion is that the vehicle pursuit by the officers was contrary to both national and local police standards and that no reasonable, trained officer could believe these actions to be proper. See Exhibit 1. The first part of his opinion is based on his assertion that the Metropolitan Police Department has an order 301.3 titled "Operation of Emergency Vehicles, Fresh Pursuit and Vehicular Pursuits." In this order, members operating unmarked sedans must discontinue pursuit once marked units have joined the pursuit. The order also directs that " Members **are prohibited form pursuing vehicles for the purpose of effecting a traffic** stop."(emphasis supplied). The order also requires notification of the police dispatcher to so that the pursuit may be monitored and supervisors can determine whether the pursuit can be continued. Based on his recitation of the testimony of various witnesses, it is clear that an unmarked police car did pursue plaintiffs' vehicle and that the purported reason for pursuit was a traffic violation. Nothing in *Steele* should preclude this part of his testimony. It is based purely on hypothetical version of what happened, founded mainly on the officer's own deposition testimony, and his knowledge of the Metropolitan Police department orders and the national standard of care. Such testimony in no way seeks to define the law and it does inform the jury

about several pertinent police regulations about which they would otherwise be unaware. Exhibit 1

The second part of his first opinion, namely that no reasonable, trained officer could believe these actions were proper, is also, it is submitted, different in kind, from the type of testimony excluded in *Steele.* The type of knowledge that a reasonably trained officer has, is not a matter that is common knowledge. Mr. Klotz, through his extensive knowledge of police procedures and training, is uniquely qualified, to advise the jury on this issue. The defendants will have ample opportunity to present rebuttal evidence on this issue as well as a chance to cross examine him. Plaintiffs respectfully submit that this part of his opinion should also heard by the jury.

Mr. Klotz's second opinion is that if the custodial taking of the four individuals was a stop and frisk situation, this was not in conformity with national and local police standards for such activity and that no reasonable, trained police officer could believe this to be proper. See Exhibit 1. The first part of this opinion is grounded in national and local police standards. He does not opine that it was a stop and frisk, which would be impermissible based on *Steele, supra.* His opinion is based on his assertion that **if** there was a frisk, national Police Standards require. those events based on "reasonable suspicion, " be documented. Mr. Klotz also asserts that the Metropolitan Police Department has a General Order on this subject and

requires a report be made of each such activity. In this case, it is clear that no such documentation was done. Such testimony is relevant because it shows how important police procedures were completely ignored in this case. Plaintiff's position is that if truthful police reports had been done, as required, they would have shown unlawful activity on the part of the officers in this case. Rather than concoct false reports, one inference is that the officers chose the less risky course of not making any reports. In order to make this argument, it is necessary to establish what the reporting requirements were, which is where Mr. Klotz's testimony comes in. It is respectfully submitted that this is a legitimate area for expert testimony.

The second part of this opinion, namely, that no reasonable, trained police officer could believe this to be proper, is also very different from the type of testimony that was excluded in *Steele.* Here, Mr. Klotz is not interpreting the law, or invading the province of the jury. He is rather, as a police expert, knowledgeable about police training, stating that no reasonable police officer having undergone such training could believe that such conduct was proper. The jury is certainly not bound to accept this testimony. And the defendants are free to extensively challenge it through cross examination. However, plaintiff respectfully submits that because it is based on police training, not a matter of common knowledge, it is admissible.

Mr. Klotz's third opinion is that the arrests of the four individuals were without any probable cause and that no reasonable, trained police officer could believe this to be proper. See Exhibit 1. Plaintiffs would concede based on *Steele*, that Mr. Klotz may not opine that there was no probable cause in this case. However, it is submitted that he should be allowed to testify, as in *Steele,* that either the officers did not understand the concept of probable cause, or that they ignored it. Such a formulation contains no new elements to his opinion and in no way surprises the defendants. It merely reformulates this part of his opinion in a way which was sanctioned by the *Steele* decision when it approved the admission of expert testimony that the security guard either did not "know the elements of shoplifting" or misunderstood "what probable cause was to make an arrest for shoplifting."

Mr. Klotz's final opinion is that, the use of force against Mikelle Bassett, Makisha Bassett, Lakeisha Parker, Shaneka Harrison and Terrance Light was excessive and contrary to national and local police standards and that no reasonable, trained police officer could believe this to be proper. See Exhibit 1. The first part of this opinion is clearly admissible. There are no elements of defining the law encompassed by it and it is of the type which is often admitted in such cases. It does not invade the province of the jury because the amount of force that police officers are permitted to use in different situations, is not a matter of common knowledge. For example, a

juror cannot be expected to understand how much force is permissible in a stop and frisk situation as opposed to an arrest, or a circumstance where there is a reasonable apprehension of danger to the officers.  Expert testimony in these areas is essential if the jury is to make an informed decision on these issues. .

Again, plaintiffs submit that the second prong of this opinion, namely that no reasonable, trained police officer could believe this to be proper, is also admissible. This part of the opinion is again, grounded in his knowledge of police training, which is certainly not a matter of common knowledge.  See Exhibit 1.

### C. Dr. Randolph's Testimony Is Admissible

Dr. Randolph is a Licensed Independent Clinical Social Worker in the District of Columbia.  She has been in private practice since 1995.. She has a Masters degree in social work and Ph.d, which had a focus in social work. She has diagnosed and treated hundreds of patients with post traumatic stress disorder ("PTSD.") and many more with other disorders.   She has taught a course in a Masters program at Catholic University which included material on PTSD.  She has attended seminars in which the diagnosis and treatment of PTSD has been a covered topic. She has kept current with the literature in the field of PTSD.  She has also performed psychological

assessments in foster care cases for the District of Columbia and has provided this information to the local courts.   See Exhibits 2 and 3.

LICSW.'s are health care providers who, as the name suggests are licensed by States and the District of Columbia, to provide mental health diagnoses and treatment without supervision.  In the District of Columbia, a Licensed Clinical Social Worker is  - A person who is licensed pursuant to the District of Columbia Health Occupations Revision Act of 1985, effective March 25, 1986 (D.C. Law 6-99; D.C. Official Code § 3-1202 et seq.).  Title 17 of the CODE OF D.C. MUNICIPAL REGULATIONS sets forth educational and training requirements needed in order to obtain a license.  In the District of Columbia, L.CSW's are permitted to diagnose and treat mental disorders without supervision.  They do not, however, have the power to prescribe medications.

The question of whether or not a L.C.S.W. may testify as an expert on Mental Health questions appears not to have been decided in the District of Columbia.  In many other states, their testimony has been accepted. In, *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 283  (4th Cir. 2004) a L.C.S.W. was permitted to testify that the plaintiff had severe and chronic PTSD which were "deeply rooted in an earlier traumatic event." In, *Mar v. Holtzman,* 2008 U.S. Dist. LEXIS 4197 (U. S. District Court For The Western

District Of Pennsylvania) the defendant filed a Motion In Limine to preclude testimony, a LCSW. The Court stated:

> In essence, Defendant argues that LCSW's are not permitted to diagnose individuals, and that as a LCSW, she does not qualify as an expert under Federal Rule of Evidence 702. Rule 702 permits the introduction of scientific, technical, or other specialized knowledge which will assist the trier of fact to understand the evidence or to determine a fact in issue. A witness may be qualified as an expert based on her knowledge, skill, experience, training or education. There are numerous cases in which LCSW's have been permitted to provide expert testimony.
>
> In this instance, Ms. Brodbeck will be permitted to testify concerning her observations and treatment of Darrell Mar, Jr.'s emotional condition. The definition of the practice of clinical social work set forth in 63 P.S. § 1903 includes "the assessment and treatment of psychosocial disability and impairment, including mental and emotional disorders."

At pp 2-3.

In *Kerns v. United States*, 2007 U.S. Dist. LEXIS 12405 (U. S. District Court For District of Arizona), the court permitted testimony concerning diagnosis and treatment of PTSD from a LCSW in a wrongful arrest and detention case. Likewise in *Harris v. United States*, 2005 U.S. Dist. LEXIS 26235 (United States District Court For The Eastern District Of Pennsylvania) the court received evidence from an LCSW that the plaintiff appeared to have developed a panic disorder precipitated by the trauma of a collision with a truck in May 2002 and that he also appeared to have symptoms of posttraumatic stress disorder. In *Rainone v. Potter*, 388 F. Supp.

2d 120 (E.D.N.Y 2005), the court received the testimony of a licensed clinical social worker with a Ph.D., who stated that the plaintiff suffered from clinical depression and posttraumatic stress disorder. See also: *Ibanez v. Velasco*, 2002 U.S. Dist. LEXIS 7364.

Courts have received expert testimony from LCSW's in cases involving other mental disorders. See: *Dillard v. Roe*, 2001 U.S. App. LEXIS 9730 (9th Cir) (Battered wife syndrome); *United States v. Gould*, 741 F.2d 45 (4th Cir. 1984) (pathological gambling disorders); *United States v. Bear Stops*, 997 F.2d 451 (8th Cir. 1993); (effects of child sex abuse); *Battista v. Dennehy*, 2006 U.S. Dist. LEXIS 12484 (U.S. District Court For The District Of Massachusetts) (gender identity disorders); *Kansas v. Hendricks*, 521 U.S. 346, 356; 117 S. Ct. 2072; 138 L. Ed. 2d 501- (pedophilia); *Medlock v. Ward*, 200 F.3d 1314, 1318 (10th Cir. 2000) (multiple personality disorder) ; *Schlunt v. Verizon Directories Sales-West, Inc.*, 2006 U.S. Dist. LEXIS 38819; *People v. Welsh, 80 P.3d 296* Supreme Court of Colorado (depression). Hence, there has been broad acceptance of such witnesses where their training and experience have been found to be appropriate.

The defendants rely on *State of Kansas v. Willis*, 888 P.2d 839, 845 (Kan. 1995). In that case, the court ruled "While Ruth Durham was eminently qualified as a social worker, having been licensed by the

behavioral sciences regulatory board, ***her background, experience***, and licensure did not qualify her to diagnose medical and psychiatric conditions such as post-traumatic stress disorder." Id. at 846.  Hence, the court did not lay down an iron clad rule that LCSW's could never testify in such cases, rather, that in this particular case, her *qualifications and experience* did not qualify her to do so.  The instant case is distinguishable, because, Dr. Randolph has almost 13 years of therapeutic experience, has diagnosed and treated hundreds of patients with PTSD, has attended seminars on PTSD, has kept current with the literature on PTSD and has actually taught a Masters course in which PTSD was part of the course.  Moreover, her licensure clearly permits her to diagnose and treat PTSD without supervision.

Defendants also cite *State of North Carolina v. Goodwin*, 320 N.C. 147, 357 S.E. 2d 639, 641 (N.C. 1987).  However, the actual ruling of the court was not as defendants suggest, a blanket rule against LCSW's testifying in PTSD cases. The court in that case stated, "Here the questions posed and answers given in qualifying the witness as an expert in the field of clinical social work *failed to establish that the witness had any particularized training or experience* relating to post traumatic stress disorder. " Id. at 151.  (Italics added).  Here, Dr. Randolph has both particularized training and experience.

The defendants cite *United States v. Eastman*, 20 M.J. 948, 954 (C.M.A. 1985). Again, their reliance is misplaced. There the basis for the ruling was the witness failed to specifically state what her experience with rape victims was comprised of . The ruling is case specific and does not even purport to lay down a general rule and is very different from the situation with Dr. Randolph who has shown substantial training and experience in the field.

In short, the authorities relied upon by defendants, do not stand for the proposition for which they are cited. They are case specific determinations based on a particular individual's training and experience and do not even purport to lay down a general rule of exclusion. The defendants also ignore the many cases where, LCSW's have been accepted as experts in PTSD, and in cases involving many other psychological disorders.

### D. Dr. Shields-Harris

Plaintiffs do not proffer Dr. Harris as an expert in the field of PTSD.

### E. Conclusion

For the reasons given above, the testimony of Dr. Corlis Randolph and Mr. Klotz, should be admitted in this case.

        Respectfully submitted,

        /s/ Geoffrey D. Allen
        Geoffrey D. Allen, Esq.
        D.C. Bar No. 288142
        1730 Rhode Island Ave. N.W.
        Suite 206
        Washington, D.C.  20036
        (202) 778-1167
        Geoffreyallen@verizon.net

## Certificate of Service

I certify that a copy of this Opposition to Defendants' Motion In Limine has been electronically mailed to Urenthea McQuinn, this 21st day of May 2008.

        /s/Geoffrey D. Allen
        Geoffrey D.  Allen Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOUISE THORNE, *et al.* : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | Civil Action No. 06-1204 |
| THE DISTRICT OF COLUMBIA : | Judge Gladys Kessler |
| : | |
| And : | |
| : | |
| UNKNOWN OFFICERS : | |
| Metropolitan Police Department : | |
| : | |
| Defendants. : | |

## ORDER

This matter comes before the Court on Defendants' Motion In Limine to exclude the testimony of Mr. Robert Klotz, Dr. Corlis Randolph and Dr. Rhonique Shields-Harris. The plaintiffs have indicated that they do not propose to call Dr. Shields-Harris to give an opinion on Post Traumatic Stress Syndrome, so that part of Defendants' Motion is moot.

The Court, having considered the pleadings of the parties with respect to the other witnesses, concludes this, ____ day _____, 2008, that the Defendants' Motions should be DENIED.

_____
Judge Kessler