## STATEMENT OF DR. CORLIS RANDOLPH

1. I am a Licensed Independent Clinical Social Worker in the District of Columbia and have been since 1989. As such, I am permitted to diagnose and treat psychological disorders without supervision.

2. I have a Masters degree in social work and Ph.D with a focus on social work. The course work for both degrees included instruction in the diagnosis and treatment of psychological disorders including PTSD.

3. Over the years I have attended seminars in which the diagnosis and treatment of PTSD has been addressed. The most recent seminar was at George Washington University in 2008, the research for which was sponsored by the Office of Crime Victims of the U.S. Department of Justice.

4. I keep current with the academic literature in the field of the diagnosis and treatment of psychological disorders including PTSD. I pay attention to PTSD issues since this is an area of particular interest to me.

5. In 2001 I taught a class at Catholic University in the Masters program for social work. I taught cognitive and behavioral therapy and social functioning. This included material on PTSD.

6. I have been diagnosing and treating patients for psychological disorders since 1995. I have treated many patients with PTSD. I would estimate the number to be in the hundreds at this point.

7. I have performed assessments for children in foster care on behalf of D.C. agencies. This work has included diagnostic psychological assessments along with providing mental status information to Superior Court.

I SWEAR AND AFFIRM THAT THE FOREGOING IS TRUE, ACCURATE AND COMPLETE.

_____
Dr. Corlis Randolph

05-21-2008
Date

PLAINTIFF'S EXHIBIT 2

the evening of January 15, 2006.

On this date, five juveniles, Mikelle and Mikesha Bassett, Shaneka Harison, LaKeisha Parker and Terrence Light were in a vehicle owned by the Bassett sisters' mother Louise Thorne. Mikelle Bassett was the operator of the vehicle. On Valley Avenue, S.E. near its intersection with Atlantic Street, S.E. the vehicle in which the juveniles were riding - after being followed for some period of time by a police units- was forced to stop. What then transpired is the subject of varying versions by some of those involved.

According to the Complaint filed in the matter the Plaintiffs contend that a police vehicle followed them for ten to twenty minutes, at one time flashing a spotlight into their car. A police car then pulled in front of their car and blocked it from proceeding any further. One officer, with his service weapon in his hand approached the driver's door, grabbed Mikelle Bassett by the neck, pulling her to the ground. Another officer then pulled LaKeisha Parker from the vehicle, threw her to the ground, and knelt on her back and handcuffed her. Shaneka Harrison was treated similarly by a third officer. Makisha Bassett was thrown against the car, handcuffed and put in a police vehicle. Terrence Light was forcefully removed from the car and handcuffed. The juveniles were kept at the scene for approximately one half hour, then released to the custody of a relative. Mikelle Bassett was given a traffic citation.

In the information received from your office, there is an 'Event Chronology for 1/15/06 created by the Metropolitan Police Department. It indicates that at 9:57 pm., on that date, an event was created for 200 Valley Avenue, S.E. Some thirty-seven minutes later, police unit 7041 requested numbers for a stop/frisk. Sometime later, at 1:01 a.m. on January 16, a unit identified as Robbery 2, also referred to this incident as a stop/frisk and requested numbers.

There is a second document of the actual radio transmissions which indicates that unit 7401 was manned by Officer Neil R. McAllister. This transcript reflects McAllister stating that around 9:56 p.m. he was in the 200 block of Valley Avenue S.E. "Assisting a robbery unit on a stop." Further, he indicates the stop was "on all sides, mostly females" and that they(the police) were ok. Further in this transcript it indicates an Officer Teal(sic) was in robbery unit 705. The transcript at 10:34 pm indicates that the unit with McAllister was still on Valley Avenue S.E. and he requested numbers for a stop and frisk and received them from the dispatcher. There is also a traffic violation notice for Mikelle Bassett, prepared by Officer Baxter McGrew. Additionally, there are some handwritten notes of the names of the driver and passenger made by Officer McGrew.

This is the extent of any contemporaneous information regarding this event. Over a year later, in response to the civil litigation instituted by the Plaintiff's, there were answers to interrogatories by Officer Orlando Teel, Neil R. McAllister and Officer Baxter McGrew.

In Officer Teel's answer, he states that on the date in question, he was in an unmarked

2

vehicle at First and Martin Luther King Jr. Avenue S.E., when he observed two individuals in a vehicle were not wearing seat belts and attempted to stop them utilizing a blue flashing dash light. He reports they would not stop, and he followed them onto 4th Street S.E. and continued through several intersections, passing a stop sign at 4th and Wayne S.E.. At 4th and Valley Avenues S.E. Officer McAllister tried to pull them over without success. When finally stopped he reports a female in the back seat was hysterical. Teel then states that he left before the matter was completed "because the other officers were carrying out the actual stop." He also reported the back seat passenger who he described as being hysterical, and identified as the sister of the driver, was handcuffed. Finally, he reports he made no report or notes regarding the incident.

In Officer McAllister's answers, he states he and his partner, Officer McGrew were in a marked police unit, on Martin Luther King, Jr., Avenue S.E. when he observed Officer Teel, with his blue dash light engaged, was attempting to stop a vehicle. The vehicle would not stop, and he began to assist Officer Teel. Officer McAllister reports the vehicle continued on Valley Avenue until its path was obstructed by traffic and was forced to halt. He states he approached the driver's side of the vehicle and opened the door. He states the driver was screaming and that she resisted his efforts to remove her from the car. He states he assisted her out of the car, handcuffed her and sat her on the curb. Then either he, or his partner, Officer McGrew made a warrant check that was negative. He then took the handcuffs off the driver. He states he contacted the owner of the vehicle, who was the driver's mother, who then came to the scene and the vehicle and the occupants were released to her. He further indicates that a traffic ticket was issued for "failure to yield to a traffic control device. Officer McAllister made no reports or notes of the incident

In Officer McGrew's answers, he reports that while riding with Officer McAllister, he observed the plaintiff's vehicle run a stop sign and repeatedly refuse to stop for Officer Teel. To assist Officer Teel they followed the car until it was stopped by traffic. He states he went to the passenger side of the vehicle where he removed the front seat passenger and another passenger from the back seat of the auto. He then went to direct traffic, and later returned to write down the names and addresses of the occupants of the vehicle. He then reports he contacted the owner of the vehicle, the Mother of the driver, who informed him she had not given her permission to drive the car. He then reports that the vehicle and its passengers were released to the owner upon her arrival. He states he does not know if any of the persons in the vehicle were handcuffed. The only documents he created were the notes as to identities of the persons in the car and the traffic citation he wrote for failure to yield to a traffic control device.

I have reviewed the traffic citation issued by Officer McGrew on this occasion. The charge on the ticket is for "Violating Restriction of learners permit." The boxes for seat belt regulation, pass red light and pass stop sign are not checked.

You have related to me some of the information obtained in the depositions of these three officers and also of Officer George Robinson that were taken on March 14, 2007. In Officer McGrews deposition, he reports observing the auto that was being pursued by Officer Teel drive

3

past two red lights and two stops signs. He observed one occupant of the vehicle in handcuffs being put in a police cruiser. He observed another occupant handcuffed and placed in a transport vehicle. In Officer McAllister's deposition he reported seeing the vehicle pass stop signs prior to being stopped by traffic. Officer Teel, in his deposition states he only observed the vehicle go through one stop sign.

A deposition was also taken from an Officer George Robinson, who reported he observed Teel's unmarked cruiser and McAllister's marked unit going in opposite direction from him, and that he then joined in the pursuit. He states that all the occupants of the vehicle were handcuffed and that the driver of the vehicle appeared irate.

### Discussion and Analysis

Based on Officer Teel's representation, both in his Answers to Interrogatories and his deposition, the triggering event was his observation that neither the driver or front seat passenger were wearing seat belts. It is undisputed that Officer Teel was, at that time, operating an unmarked police unit. He then proceeded to attempt to make a traffic stop utilizing his blue dash light. When this effort was ignored by the driver of the vehicle, he continued to pursue this vehicle, and was joined in this effort by Officers McAllister, McGrew and Robinson. The pursued auto then proceeded some distance, and depending on various versions passed several red lights and stop signs before being halted by traffic. Once stopped, all the occupants were removed from the vehicle, some or all we handcuffed and then detained until turned over to an adult relative of the driver. The contemporaneous police reports reviewed, the Chronology, transcript, and traffic citation, make no mention of a police pursuit. There is documentation that McAllister informed the police dispatcher that he was assisting a robbery unit and requested control numbers for a "Stop/Frisk" situation.

Dealing first with the pursuit situation. The national police standards require police agencies to have directives/training as to when, how, and who may engage in pursuit of vehicles refusing to stop for police officers. The Metropolitan Police Department has such an order 301.3 titled Operation of Emergency Vehicles, Fresh Pursuit and Vehicular Pursuits. In this order, members operating unmarked sedans must discontinue pursuit once marked units have joined the pursuit. The order also directs that "Members are **prohibited form pursuing vehicles for the purpose of effecting a traffic stop."**(emphasis supplied). The order also requires notification of the police dispatcher to so that the pursuit may be monitored and supervisors can determine whether the pursuit can be continued.

Turning next to the 'Stop/Frisk' portion of this event. National Police Standards require stop and frisks, i.e. those events based on "reasonable suspicion" be documented. The Metropolitan Police Department has a General Order on this subject and requires a report be made of each such activity.

Finally, the Use of Force will be discussed. Police Officers are authorized to use force to

protect themselves and others from physical injury and death, to make and maintain a valid arrest and to prevent the escape of a person to be arrested. The District of Columbia, in its Municipal Regulations and the Metropolitan Police Department in its General Orders have standards for the use of force. All of these local standards mandate that officers shall only use the minimum force necessary to effect an arrest and that the use of force be documented and investigated. The use of handcuffs are usually restricted to persons under arrest or subject to a stop and frisk, where either the crime or actions of the individual gives the officer reason to believe his safety requires this action to be taken.

The purpose for the contemporaneous documenting of police pursuits, stop and frisk situations and use of force by police officers are for protection of the persons involved in the situation, both civilian and police officers. For example in this situation, there is no contemporaneous reports that document any reason for what the officers (McAllister and Teel) classified as a stop and frisk situation. There is no documentation that a vehicle pursuit took place or that any investigation was made regarding this situation. Similarly there is no documentation as to-or investigation into- to the use of force utilized by the officers at the scene

## Preliminary Opinions

It is my opinion that the vehicle pursuit by the officers was contrary to both national and local police standards. No reasonable, trained officer could believe these actions to be proper.

It is my opinion that if the custodial taking of the four individuals was a stop and frisk situation, this was not in conformity with national and local police standards for such activity. No reasonable, trained police officer could believe this to be proper.

It is my opinion that the arrests of the four individuals was without any probable cause. No reasonable, trained police officer could believe this to be proper.

It is my opinion that the use of force against Mikelle Bassett, Makisha Bassett, Lakeisha Parker, Shaneka Harrison and Terrance Light was excessive and contrary to national and local police standards. No reasonable, trained police officer could believe this to be proper.

Submitted by:

Robert W. Klotz
Consultant

Attachments: As noted in this report.